UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**CHERYL MORRISON,**

    **Plaintiff,**

    **v.**

**CITY OF JERSEY CITY, JERSEY CITY POLICE DEPARTMENT, P.O. ARKAIUSZ ZYLKIEWICZ and POLICE OFFICERS, JOHN AND JANE DOE, 1-20, being as yet Unknown actors,**

    **Defendants.**

Civ. No. 19-20369 (KM) (AME)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiff, Cheryl Morrison, alleges that while she was driving on Bergen Avenue in Jersey City, a Jersey City police car collided with her vehicle. She claims that Police Officer Arkaiusz Zylkiewicz got out of his police car, began screaming at her, and was soon joined by a "mob" of other officers who surrounded her car, shouted at her, and intimidated her. Plaintiff was arrested, forced to undergo sobriety testing, and was ultimately charged with reckless driving and other moving violations. She filed suit against Defendants Jersey City, the Jersey City Police Department, Officer Zylkiewicz, and the unidentified throng of police officers. She asserts, *inter alia,* claims of racial profiling and excessive use of force, pursuant to 42 U.S.C. §1983.

    Now before the Court is Defendants' second motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (DE 29).[1] It is directed solely to the *Monell* claims against the City. For the following reasons, the motion is **GRANTED**.

---

[1]     Certain citations to the record are abbreviated as follows:

    "DE" refers to the docket entry numbers in this case

    "Compl." refers to Plaintiff's Complaint and Demand for Trial by Jury filed in Hudson County Superior Court. (DE 1-1.)

### I. BACKGROUND
#### A. Facts

Plaintiff alleges that on March 24, 2018, at some time after 11:00 pm, she was driving on Bergen Avenue in Jersey City when a police car "darted" out of its parking spot into traffic, colliding with her car's front passenger side. (Compl. ¶¶ 3-5.) She stopped her car and the driver of the police car, Officer Zylkiewicz, got out of his police car and began "screaming" at her, asserting that she caused the collision. (Compl. ¶¶ 8-10.) Plaintiff then called her sister-in-law, Cora Jackson Morrison, on her cellphone to explain what had happened. A group of more than ten police officers then emerged from the nearby police station, "surrounded" Plaintiff's car, and began shouting at her and leaning on her vehicle. (Compl. ¶¶ 11-14.) Having heard Plaintiff's distress and the officers' shouts, Cora Morrison drove to the scene to pick up Plaintiff. Upon arriving there, Cora Morrison observed the group of officers "creating an intimidating and dangerous situation" by screaming at Plaintiff, ordering her to exit the vehicle, and arresting her without giving Miranda warnings when she refused to submit to sobriety testing. (Compl. ¶¶ 23-29.)

After her arrest, Plaintiff was transported to the Bureau of Criminal Investigation, where officers "subjected [her] to continued humiliation and intimidation" by ordering her to submit to six breathalyzer tests without informing her that she could refuse. (Compl. ¶¶ 32-37.) The breathalyzer testing yielded a blood alcohol content reading of .06, which Plaintiff attributes to drinking "less than one glass of wine" approximately one hour earlier. (Compl. ¶ 38.) Plaintiff was ultimately released "near dawn" and charged with reckless driving and multiple moving violations. (Compl. ¶¶ 39-40.)

---

"Not. of Rem." refers to Defendants' notice of removal. (DE 1.)

"MTD" refers to Defendants' brief in support of their motion to partially dismiss Plaintiff's complaint. (DE 29.)

"Op." refers to Plaintiff's brief in opposition to Defendants' motion to dismiss. (DE 32.)

Plaintiff alleges several forms of damages. She states that the false charges against her forced her to spend $1,500 retaining a lawyer, who she claims "failed to adequately represent her and pressed her to plead guilty" to the reckless driving charge in exchange for the dismissal of the moving violations.[2] (Compl. ¶¶ 41-44.) Additionally, she claims that she needed to pay $500 to have her car towed from the pound to a repair facility and then paid $2,057 in automotive repairs. (Compl. ¶¶ 46-47.) Finally, she has experienced "soft tissue injuries," including "cervical strain and sprain," as well as ongoing emotional distress. (Compl. ¶¶ 48-49.)

### B. Procedural History

Plaintiff filed her complaint and demand for a jury trial on October 15, 2019, in Hudson County Superior Court against Jersey City, the Jersey City Police Department, Officer Zylkiewicz, and the unidentified other police officers. (Compl. at 1-2.) Her Complaint alleges in Counts One and Two, pursuant to 42 U.S.C. § 1983, that police officers violated her rights under the 14th Amendment and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10-6.2, because they (1) detained, arrested, and charged her primarily because she is African American; (2) exercised excessive force in screaming at her, surrounding her, arresting her, and repeatedly administering a breathalyzer test on her. (Compl. ¶¶ 51-69.) Next, she claims in Count Three that the officers conspired to deprive her of her civil rights in violation of 42 U.S.C. § 1985 and the NJCRA. (Compl. ¶¶ 70-73.) Finally, in the remaining counts, she alleges claims for common law false arrest, false imprisonment, fraudulent concealment and destruction of evidence, assault and battery, intentional infliction of emotional distress, and bodily injury and property

---

[2]   Plaintiff also claims that this attorney negligently "failed to ask for and receive a stipulation that this plea should not be evidentiary in any subsequent lawsuit." (Compl. ¶ 44.)

damage resulting from the officers' recklessness or negligence.[3] (Compl. ¶¶ 74-109.)

On November 15, 2019, Defendants removed this action from Hudson County Superior Court to this District pursuant to 28 U.S.C. § 1441(b), citing the Complaint's allegation of claims under federal law, specifically under 42 U.S.C. § 1983. (Not. of Rem. ¶¶ 1-3)

On December 19, 2019, Defendants moved to dismiss Plaintiff's common law tort claims, citing her failure to give timely notice of these claims as required by the New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 to 59:12-3. (DE 5.) Plaintiff did not oppose this motion and I granted it on February 6, 2020. (DE 7, 9.) Thus, after this dismissal, only Counts One, Two, and Three remained, alleging violations of 42 U.S.C. § 1983 and § 1985 for racial discrimination, excessive force, and conspiracy.

On July 13, 2021, Defendants filed the motion to dismiss currently before me, arguing that Plaintiff's complaint fails to properly allege municipal liability pursuant to 42 U.S.C. § 1983 and thus, her claims against Jersey City and the Jersey City Police Department should be dismissed. (MTD at 5-8.) Specifically, they maintain that Plaintiff does sufficiently plead that the alleged constitutional violations were caused by a policy or custom adopted by Jersey City or the Jersey City Police Department, as is required for liability to attach under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978).[4]

---

[3] The seven counts comprising Plaintiff's common law claims are numbered inconsistently, so for clarity I note that Plaintiff's claim for false arrest is marked Count Four, false imprisonment is marked Count Five, fraudulent concealment and destruction of evidence is marked Count Seven, assault and battery is (also) marked Count Five, intentional infliction of emotional distress is marked Count Nine, bodily injury is marked Count Ten, and property damage is marked Count Eleven. (Compl. ¶¶ 74-109.) Counsel is instructed to renumber the counts in any subsequent pleading.

[4] As noted, Counts One and Two of Plaintiff's complaint are also based on alleged violations of the New Jersey Civil Rights Law. Defendants arguments regarding municipal liability apply with equal force to the alleged violations of state law, since New Jersey courts "look[] to federal jurisprudence construing 42 U.S.C. § 1983 to formulate a workable standard for identifying a substantive right under the [New

(MTD at 7-8.) In response, Plaintiff contends that she has sufficiently alleged municipal liability under theories of failure to adequately train, supervise, or discipline Jersey City police officers and maintains that the alleged involvement of high-ranking police officials renders Jersey City liable. (Op. at 3-10.)

## II. DISCUSSION AND ANALYSIS

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs.*, Inc., 542 F.3d 59, 64 (3d Cir.2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678. Stated differently, in reviewing the well-pleaded factual

---

Jersey] Civil Rights Act" and have cited *Monell* as the standard governing municipal liability. *Harz v. Borough of Spring Lake*, 234 N.J. 317, 330, 337 n.7 (2018).

allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### B. Municipal Liability under 42 U.S.C. § 1983 and the NJCRA

For constitutional torts, whether under 42 U.S.C. § 1983 or the analogous provisions of the NJCRA, there is no respondeat superior liability. Municipal liability for the acts of employees must be premised on the doctrine of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *See Connick v. Thompson*, 563 U.S. 51, 60-61, 131 S. Ct. 1350, 1358–59 (2011); *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013). A local government unit is liable only to the extent that its own policies or practices led to a deprivation of constitutional rights. *See City of Canton Ohio v. Harris*, 489 U.S. 378, 388-90 (1989) (citing *Monell*, 436 U.S. at 694); *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir.1990) (same). Thus, a municipality may be liable under Section 1983 where the constitutional injury is alleged to have been caused by either a municipal "policy" or "custom." *See Monell*, 436 U.S. at 694.

Policy is made when a "'decisionmaker possess[ing] final authority to establish [local] policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." *Bielevicz v. Dubinion*, 915 F.2d 845, 850 (3d Cir. 2007) (citing *Andrews*, 895 F.2d at 1480).

Nor is it sufficient to allege the mere existence of such a policy or custom. *Monell* liability may only be premised on facts establishing "an affirmative link between the [public entity]'s policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

6

Here, Plaintiff has failed to allege sufficient facts to set forth a claim of *Monell* liability against the City of Jersey City.[5] Indeed, her claim that the conduct at issue was the result of official policy or custom rests solely on the allegation that high-ranking police officers were located inside the police station along Bergen Avenue and the Bureau of Criminal Investigation when Plaintiff's constitutional rights were allegedly being violated outside.[6] (*See* Compl. ¶¶ 6, 31, 35.) I understand the logical import of these allegations to be that the presence of high-ranking officers within these police facilities demonstrates that they were contemporaneously aware of other officers' treatment of Plaintiff and did not stop it, thus approving of officers' misconduct "implicitly or explicitly."[7] (Compl. at 2.) However, even assuming that Plaintiff is correct that higher-ranking officers were both present and aware of how Plaintiff was treated, her Complaint still pleads no detail as to how such tacit

---

[5] The complaint must be dismissed against the Jersey City Police Department. A New Jersey police department is not a separate legal entity, but a department of the municipality. N.J. Stat. Ann. § 40A-14-118 (municipal police department is "an executive and enforcement function of municipal government"); *see also Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004); *Mitchell v. City of Jersey City*, No. 15-CV-6907 (KM), 2016 WL 1381379, at *1 n.1 (D.N.J. Apr. 7, 2016). Thus the proper municipal defendant is the City itself, not the police department. The amendment is technical; there is no change in substance.

[6] In her opposition to Defendants' motion to dismiss, Plaintiff invites me to take judicial notice of the "undisputed . . . matter of public record that the Jersey City Police Department has a problem with systemic racism which subjects African Americans to excessive use of force and other wrongful police conduct at levels nearly 500% higher than whites." (Op. at 3.) The matter is not suitable for judicial notice, *see* Fed. R. Evid. 201. But even were I to accept this invitation, these claims about systemic racism within Jersey City's municipal government and police department are generalized and do not establish an "affirmative link" between an official policy or custom and the particular constitutional violations alleged by Plaintiff. *See Tuttle*, 471 U.S. at 809.

[7] The introduction to Plaintiff's Complaint also asserts the conclusion that high ranking officers "joined in and conspired to violate Plaintiff's Constitutional rights." (Compl. at 2.) However, the Complaint lacks facts to that effect, and only indicates that high-ranking officers were present in the police station when Plaintiff's detention and arrest occurred nearby. (*See* Compl. ¶¶ 6, 31, 35.)

approval constituted an official declaration of municipal policy or a municipal course of conduct "so well-settled and permanent as to virtually constitute law." *Bielevicz*, 915 F.2d at 850; *Andrews*, 895 F.2d at 1480. The theories of liability alleged in her Opposition to Defendants' motion—failure to train, supervise, and discipline—are simply absent from Plaintiff's complaint and the detail alleged is too skeletal for me to find that these theories apply. Thus, lacking any substantive support, Plaintiff's statement that the alleged constitutional violations are an "expression of a policy or practice" is simply conclusory, not factual, and I need not accept it.[8] (Compl. at 2.)

Accordingly, while I will grant Defendants' motion to dismiss to dismiss Counts One, Two, and Three as to Jersey City, I will do so without prejudice. Plaintiff is granted leave, if she can, to file an amended complaint that remedies these deficiencies. *See Phillips*, 515 F.3d 224, 245-46 (3d Cir. 2008) (requiring district courts to permit a curative amendment to a complaint "unless the district court finds that amendment would be inequitable or futile.").

### III. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the claims against Jersey City and the Jersey City Police Department is **GRANTED**.

A separate order will issue.

Dated: March 29, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

[8] The standard for finding a policy or custom under the NJCRA mirrors the standard for finding a policy or custom under Section 1983. Plaintiff's claim for a violation of the NJCRA fails for the same lack of substantive detail as discussed above.