UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL MORRISON,<br><br>           Plaintiff,<br><br>    v.<br><br>CITY OF JERSEY CITY, *et al.*<br><br>           Defendants. | Civil Action No. 19-20369 (JXN) (AME)<br><br>OPINION |

**NEALS**, District Judge:

This matter comes before the Court on Defendants Jersey City, New Jersey ("Jersey City"), Jersey City Police Department ("JPD"), and Officer Arkaiusz Zylkiewicz's ("Zylkiewicz") (collectively, the "Defendants") motion for summary judgment pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1. (ECF No. 75). Plaintiff Cheryl Morrison ("Plaintiff") opposed (ECF No. 77) ("Pl.'s Opp."), and Defendants replied. (ECF No. 78) (the "Reply"). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391, respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion for summary judgment (ECF No. 75) is **GRANTED**, and all remaining claims in Plaintiff's Amended Complaint (ECF No. 53-1) (the "Amended Complaint") are **DISMISSED** with prejudice.

**I.      BACKGROUND AND PROCEDURAL HISTORY**[1]

This action arises from a motor vehicle accident involving Plaintiff and Zylkiewicz outside the South District Police Station ("South District") in Jersey City, New Jersey. On March 24, 2018, Plaintiff, an "African American woman[,]" was "out with her sister-in-law [(Cora Jackson

---

[1] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

1

Morrison) ("Jackson")] at a bar in Jersey City." (Defs.' Statement of Undisputed Material Facts (ECF No. 75-1) ¶ 16); Am. Compl. ¶ 1). Plaintiff had a glass of wine at the bar, and then drove Jackson home sometime after 11:00 p.m. (*Id.* ¶¶ 18-21). Zylkiewicz, who was accompanied by Officer George Noutsopoulos ("Noutsopoulos"), was driving to the South District to drop off paperwork at the same time. (Zylkiewicz's April 21, 2022, deposition transcript (ECF No. 75-12) at T27:2-10).

As Plaintiff approached Wilkinson Avenue, Zylkiewicz backed his police vehicle out of a parking spot, colliding with Plaintiff's vehicle. (Plaintiff's February 25, 2021, deposition transcript (ECF No. 75-10) ("Pl.'s Dep.") at T19:20- 25; Am. Compl. ¶ 5). Plaintiff testified that she "got out of [her] car" to "look[] at [the] damage[]" and "got back in [her] car" after she saw officers approaching. (Pl.'s Dep. at T21:20-24). She also alleges that Zylkiewicz "jumped out of his vehicle and began screaming at Plaintiff asserting [that] she hit him." (Am. Compl. ¶ 9).

Plaintiff alleges that while on the phone with Jackson, "as many as ten police officers were at the scene[,]" who began "shouting and leaning on [P]laintiff's" vehicle. (Pl.'s Dep. at T21:23-25); (Am. Compl. ¶¶ 12-15). Jackson "heard the police officers screaming and heard" Plaintiff "become extremely distressed and fearful." (Am. Compl. ¶ 18). Jackson then "dr[o]ve to the scene of the unfolding assault upon" Plaintiff, and "observed that a mob of officers" were "still present and [] creating an intimidating and dangerous situation." (*Id.* ¶¶ 19-20).

When questioned by officers, Plaintiff stated that she had "one glass of wine that night." (Pl.'s Dep. at T31:4-12); *see also* (Am. Compl. ¶ 21). Plaintiff was "ordered out of" her vehicle to "submit to a battery of sobriety tests. . . ." (Am. Compl. ¶ 22). Plaintiff exited her vehicle, but "refuse[d] to engage in sobriety tests for fear that they would be manipulated and mischaracterized." (*Id.* ¶¶ 23-24). Plaintiff testified that she did not participate in the sobriety test

2

because she "wasn't intoxicated and [] didn't need" to take the breathalyzer. (Pl.'s Dep. at T20:6-14). Plaintiff was subsequently placed under arrest. (*Id.* at T20:14-17). Officers then drove Plaintiff to the "Bureau of Criminal Investigation at the Municipal Courthouse" ("Criminal Bureau") and asked her to "conduct a breathalyzer[,]" which she did, resulting in a BAC of 0.06%. (*Id.* T33:15-T34:1).

Plaintiff was issued traffic tickets for "driving while intoxicated, [] reckless driving[,] and multiple other moving violations." (Am. Compl. ¶ 37); (Pl.'s Dep. at T35:11-13). No police officer "hit" or "str[uc]k" Plaintiff while in custody, and Plaintiff did not seek medical treatment. (Pl.'s Dep. at T34:16-22; T37:23-T38:4). As part of a plea bargain, Plaintiff's lawyer "pressed her to plead guilty to the reckless charge in exchange for dismissal of the other charges." (Am. Compl. ¶ 39); (Pl.'s Dep. at T36:1-7).

On October 15, 2019, Plaintiff filed a complaint in the Superior Court of New Jersey. (ECF No. 1-1). On November 15, 2019, Defendants removed the action to this Court. (ECF No. 1). On December 19, 2019, Defendants filed a motion to partially dismiss the complaint. (ECF No. 5). Because Plaintiff did not oppose (*see* ECF No. 7), the Honorable Kevin McNulty, U.S.D.J. (Ret.) granted the motion, dismissing with prejudice "Counts 4 (false arrest), 5 (false imprisonment), 7 (fraudulent concealment and destruction of evidence), 5 (assault and battery),[2] 9 (internal infliction of emotional distress), 10 (bodily injury), and 11 (property damaged)." (ECF No. 9).

On July 13, 2021, Defendants filed a second partial motion to dismiss, seeking dismissal of all claims against Jersey City and the JPD. (ECF No. 29). On March 29, 2022, Judge McNulty

---

[2] Plaintiff's Complaint identifies two separate "Fifth Cause of Action" headings. The first for False Imprisonment appears at (Am Compl. ¶¶ 80-84), the second for Assault and Battery appears at (Am. Compl. ¶¶ 90-94).

3

granted the motion, dismissing the *Monell*[3] claims against Jersey City and the JPD,[4] and granted Plaintiff leave to file an amended complaint. (ECF Nos. 42-43).

On April 28, 2022, Plaintiff filed a motion to file an amended complaint. (ECF No. 44). On June 9, 2022, the Honorable André M. Espinosa, U.S.M.J., directed Plaintiff to file a proposed amended complaint (*see* ECF No. 50), which she did on June 13, 2022. On August 12, 2022, Magistrate Judge Espinosa granted in part and denied in part Plaintiff's motion for leave to file the Amended Complaint. (ECF No. 56). Specifically, the Court denied leave to amend claims against Jersey City, but allowed the following Counts in part pursuant to 42 U.S.C. §§ 1983 and 1985 against Zylkiewicz: (i) violation of the Fourth Amendment's guarantee to be secure in one's person from unreasonable searches and seizures (Count One); (ii) violation of the Fourteenth Amendment's due process guarantee (Count Two); (iii) violation of the Fourteenth Amendment's Equal Protection Clause (Count Three); (iv) violation of the Fourth Amendment's bar against excessive force (Count Four); and (v) civil conspiracy under 42 U.S.C. § 1985 and the New Jersey Civil Rights Act, N.J. Stat. § 10:6-1 *et seq*. (Count Five) (ECF Nos. 53-1, 56).

On October 13, 2023, Defendants filed the instant summary judgment motion. (ECF No. 75). On November 7, 2023, Plaintiff filed opposition. On November 13, 2023, Defendants replied. On November 29, 2023, this matter was reassigned to this Court. (ECF No. 79). On June 10, 2024, the Court held oral argument and, for the reasons set forth on the record, dismissed Counts One, Four, and Five with prejudice; and reserved decision on Counts Two and Three. (ECF No. 82). *See* L. App. R. 3.1. This matter is now ripe for consideration.

---

[3] In *Monell v. Dep't of Soc. Servs.,* the United States Supreme Court established that government entities are "persons" subject to liability under 42 U.S.C. § 1983 for constitutional rights violations but were not liable under the doctrine of *respondeat superior* for their employees' misconduct. 436 U.S. 658, 690-92 (1978).
[4] The Court dismissed Plaintiff's claims against the JPD because a "New Jersey police department is not a separate legal entity, but a department of the municipality." (ECF No. 42 at 7 n.5) (citations omitted).

## II.     LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

Plaintiff claims three "irrefutable data points" prove she "was the victim of a frameup." (Pl.'s Opp. at 6[5]). First, "the damage to" the parties' vehicles shows Zylkiewicz "rammed" Plaintiff's vehicle, placing the liability for the accident on to him. (*Ibid.*). Second, the "accident analysis" proves that neither "vehicle was traveling at a high rate" of speed, which is consistent with Plaintiff's testimony that "she traveled at 25 mph, a slow rate" and contradicts Zylkiewicz's assertion that he "exercised all due care and that Plaintiff came at such a high rate of speed. . . ." (*Ibid.*). And third, "Plaintiff's blood alcohol level was .06, well under" the legal limit of .08. (*Ibid.*). Plaintiff also claims that there is "circumstantial evidence" (i.e. Plaintiff's "reputation for sobriety and history of honesty, hard work, and compassion[,] and [Zylkiewicz's] history of dishonesty, of being at fault for motor vehicle accidents, and [] racist interactions with the public") to preclude summary judgment. (*Ibid.*). The Court addresses Plaintiff's claims in turn.

### A. The Unreasonable Seizure and Excessive Force Claims (Counts One and Four)

#### 1. Plaintiff's Unreasonable Seizure Claims are Barred Because Officers Had Probable Cause to Arrest Plaintiff

Defendants contend that because "there was probable cause to arrest [P]laintiff, any claims under § 1983 for unlawful seizure or arrest must be dismissed." (ECF No. 75-3) ("Def.'s Br."). The Court agrees.

The "Fourth Amendment protects the right of people to be secure in their persons against unreasonable seizures." *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017) (cleaned up). "A person is considered seized whenever officials restrain [an individual's] freedom of movement such that he is not free to leave." *Id.* at 364 (cleaned up). A plaintiff's claim for false imprisonment

---

[5] The Court refers to the ECF page numbers in this Opinion.

in connection with an arrest while it may cover that brief subsequent detention, "is subject to the same analysis as his arrest." *Cherkas v. White*, No. 17-4498, 2018 WL 1991738, at *2 n.2 (E.D. Pa. Apr. 27, 2018). To that end, claims under § 1983 "for false arrest, false imprisonment, and malicious prosecution" require a plaintiff to "establish the absence of probable cause." *Id.* at *2 (citations omitted).

"Probable cause is an absolute defense to" claims for "false arrest, false imprisonment," illegal search and seizure, and malicious prosecution. *Herman v. City of Millville*, 66 F. App'x 363, 365 n.3 (3d Cir. 2003) (cleaned up); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (Probable cause analysis for false imprisonment and false arrest are the same). Probable cause is determined by analyzing the "totality of the circumstances" in assessing the events leading up to the arrest and viewing the facts "from the standpoint of an objectively reasonable police officer." *Phillips v. Cullen*, No. 9-1706, 2011 WL 689602, at *6 (D.N.J. Feb. 18, 2011) (cleaned up). The appropriate inquiry "is not whether the person arrested" in fact "committed the offense but whether the arresting officer[] had probable cause *to believe* the person committed the offense." *Groman*, 47 F.3d at 634 (cleaned up) (emphasis added).

"[P]robable cause exists if, at the time of the arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing the suspect had committed or was committing an offense." *Herman*, 66 F. App'x at 365-66 (cleaned up); *see also Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (District court "may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly.") (cleaned up).

Here, the following facts are undisputed. Plaintiff and Zylkiewicz were involved in a motor

7

vehicle accident, and Plaintiff advised responding officers that she had one glass of wine before leaving the bar and driving her vehicle. (Pl.'s Dep. at T19:14-16; T22:14-21; T23:5-15; T31:4-12); *see also* (Am. Compl. ¶¶ 5, 7, 21). Plaintiff was "ordered out of" her vehicle to "submit to a battery of sobriety tests. . . ." (Am. Compl. ¶ 22). Upon existing the vehicle, Plaintiff "refuse[d] to engage in sobriety tests. . . ." (*Id.* ¶¶ 23-24). Plaintiff testified that she "wasn't intoxicated and [] didn't need" to take the breathalyzer. (Pl.'s Dep. at T20:6-14). Officers then arrested Plaintiff. (*Id.* at T20:14-17).

These facts, irrespective of who was ultimately at fault for the accident, provided officers with probable cause to detain and arrest Plaintiff. Plaintiff's own words, as well as her actions show that she drove from a bar, had at least one glass of wine, and refused to engage in sobriety testing. Consequently, the facts and circumstances within the officers' knowledge at the time were "reasonably trustworthy" to believe there was probable cause to arrest Plaintiff. *Herman*, 66 F. App'x at 365-66. And because there was probable cause, Plaintiff's claims under § 1983 for unlawful seizure (Count One) are dismissed with prejudice.

### 2. Probable Cause Defeats Any Claim for Malicious Prosecution[6]

Plaintiff argues that the moving violations issued in connection with the accident lacked probable cause. The Court disagrees.

To establish a claim for malicious prosecution, a plaintiff must in part demonstrate the absence of probable cause and that defendants acted with malice. *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001) (citation omitted). The plaintiff must also show that she "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a

---

[6] Though Plaintiff does not formally allege malicious prosecution, she alleges that "in a continuation of the mendacious and false narrative the defendants had sought to construct, plaintiff was charged with driving while intoxicated, with reckless driving and multiple other moving violations." (Am. Compl. ¶ 37). Because Plaintiff indicates that her charges lacked probable cause, the Court addresses any claim for malicious prosecution.

legal proceeding." *Lozano v. New Jersey,* 9 F.4th 239, 247 (3d Cir. 2021) (cleaned up). Malice is "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Morales v. Busbee*, 972 F. Supp. 254, 261 (D.N.J. 1997) (cleaned up). In considering probable cause in a malicious prosecution claim, courts analyze whether the facts were such that a person of "ordinary prudence" believed "on reasonable grounds the truth of the charge at the time it was made[.]" *Id.*; *Lind v. Schmid*, 67 N.J. 255, 263 (1975) (citations omitted). Moreover, a defendant's eventual acquittal does not mean probable cause did not exist. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

In carefully reviewing the record, Plaintiff informed officers that she had at least one glass of wine prior to accident, she refused to take an on-site sobriety test, and was subsequently arrested and transported to the Criminal Bureau. (Pl.'s Dep. at T20:14-17; T31:4-12); (Am. Compl. ¶¶ 21-24). After submitting to a breathalyzer at the Criminal Bureau, officers learned Plaintiff had a BAC of 0.06% on the night of the accident. (Pl.'s Dep. at T33:15-T34:1). Plaintiff was then issued traffic tickets for "driving while intoxicated, [] reckless driving[,] and [] other moving violations." (Am. Compl. ¶ 37); (Pl.'s Dep. at T35:11-13). Given these facts, any claim for malicious prosecution is dismissed with prejudice because officers had probable cause to charge Plaintiff.

The issuance of the traffic summonses satisfies the first element (defendant instituted proceedings against Plaintiff) of a malicious prosecution claim. *Trabal*, 269 F.3d at 248. As to the second and third elements (lack of probable cause and acted with legal malice) (*see id.* at 248), Plaintiff contends that the summonses resulted from a "frame up," thereby lacking probable cause and an indication of Defendant's malicious intent. As to the fourth element (proceedings terminated in Plaintiff's favor) (*id.* at 248), Plaintiff asserts that her driving while intoxicated

charge was dismissed pursuant to a plea agreement. Because Plaintiff pled guilty, she cannot make out a malicious prosecution claim.

To satisfy the fourth element, the Third Circuit requires that the prior criminal proceeding be disposed of in a way that reflects the accused's innocence. *Donahue v. Gavin,* 280 F.3d 371, 383 (3d Cir. 2002) (cleaned up); *see also Hector v. Watt,* 235 F.3d 154, 156 (3d Cir. 2000) (Plaintiff "claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."). In other words, "a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *McGann v. Collingswood Police Dep't,* No. 10-3458, 2012 WL 6568397, at *6 (D.N.J. Dec. 17, 2012) (cleaned up). Even "if the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983." *Id.* at *7 (cleaned up).

The United States Supreme Court recently held in *Thompson v. Clark* that a "Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." 596 U.S. 36, 49 (2022). And that a "plaintiff need only show that the criminal prosecution ended without a conviction." *Id.* at 49.[7]

---

[7] The Court expounded on its rationale and stated:
> The question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed. And the individual's ability to seek redress for a wrongful prosecution cannot reasonably turn on the fortuity of whether the prosecutor or court happened to explain why the charges were dismissed. In addition, requiring the plaintiff to show that his prosecution ended with an affirmative indication of innocence would paradoxically foreclose a § 1983 claim when the government's case was weaker and dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial. That would make little sense. Finally, requiring a plaintiff to show that his prosecution ended with an affirmative indication of innocence is not necessary to protect officers from unwarranted civil suits—among other things, officers are still protected by the requirement that the plaintiff show the absence of probable cause and by qualified immunity.

*Thompson,* 596 U.S. at 48-49.

Here, Plaintiff's malicious prosecution claim, to the extent she asserts one, fails because she pled guilty to reckless driving (*compare* Def.'s Br. at 23; Reply at 2), resulting in a conviction. However, even assuming that the charge was initiated without probable cause, the proceeding did not end in Plaintiff's favor, thereby failing to meet the second prong to establish a malicious prosecution claim. Under New Jersey law, the offense of driving while intoxicated encompasses:

> (a) A person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, *or* operates a motor vehicle with a blood alcohol concentration of 0.08 percent or more by weight of alcohol in the defendant's blood. . . ."

N.J. Stat. Ann. § 39:4-50(a) (emphasis added).

The plain language of the statute provides that a BAC of 0.08 is not required to charge a person with driving while intoxicated. Indeed, a person may be charged if he or she operates a vehicle "while under the influence of intoxicating liquor" or "operates a motor vehicle with a blood alcohol concentration of 0.08 percent or more." *Id.*

Here, Plaintiff's BAC of 0.06% established that she had been drinking prior to the accident. The facts and circumstances, coupled with the statutory language, were "reasonably trustworthy[,]" and provided probable cause for the DWI charge. *Herman,* 66 F. App'x at 365-66; *see also Merkle,* 211 F.3d at 789. Accordingly, the existence of probable cause defeats any claim for malicious prosecution.

### 3. There Was No Excessive Force in Arresting Plaintiff

Excessive force claims arise from the Fourth Amendment's protection against unreasonable seizures. *Groman,* 47 F.3d at 633 (citation omitted). "[T]he central question is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (cleaned up).

11

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (cleaned up). The Court then determines whether the use of force was "objectively reasonable" considering the facts confronting the officer at the time, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. O'Connor*, 490 U.S. 386, 396-97 (1989) (citations omitted).

"Appropriate consideration must be given to the circumstances of the police action, which are often tense, uncertain, and rapidly evolving." *Lankford v. City of Clifton Police Dep't,* 546 F. Supp. 3d 296, 309 (D.N.J. 2021) (cleaned up). The reasonableness of the conduct is judged from the perspective of a reasonable officer at the scene and not "with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (citation omitted). To that end, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment because "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Id.*, 490 U.S. at 396 (citation omitted).

Here, Plaintiff 's excessive force claim relies on the language and behaviors of Zylkiewicz and the other officers after the accident. Specifically, Plaintiff alleges that officers exercised excessive force in "screaming at her[,]" "surround[ing]" her vehicle, pushing her "into the hard plastic back seat of a squad car," arresting her, and repeatedly administering a breathalyzer test on her. (Am. Compl. ¶¶ 12, 15, 22-23, 25, 29, 33-34). This is insufficient.

The "use of language *during* an arrest has been held to be irrelevant to an excessive-force claim." *Lankford,* 546 F. Supp. 3d at 315 (quoting *Thompson v. Howard*, No. 9-1416, 2015 WL 5039395 at *8 (W.D. Pa. Aug. 26, 2015)) ("[M]erely adding verbal threats or racial epithets cannot

12

transform an otherwise non excessive use of force into an unconstitutional use of excessive force.") (cleaned up).  The "issue in an excessive force claim is whether the force used was greater than what was justified . . . whether an officer had ill motive does not alter the analysis of whether the circumstances justified the amount of force used."  *Lankford,* 546 F. Supp. 3d at 315.

In viewing the facts in the light most favorable to Plaintiff, the record demonstrates an obvious upsetting circumstance, particularly in taking place outside of a police station with ten or more officers involved.  However, this inappropriate and likely unwarranted behavior does not rise to "constitutionally excessive" use of force.  Accordingly, Count Four is dismissed with prejudice.

### B.     The Due Process and Equal Protection Claims (Counts Two and Three)

Any claim of excessive force, false arrest, and/or malicious prosecution, which relies on the Fourteenth Amendment's Due Process guarantee, is dismissed with prejudice because "when government behavior is governed by a specific constitutional amendment," like here, a "due process analysis is inappropriate."  *Berg. v. Cnty. of Alleghany*, 219 F.3d. 261, 268 (3d. Cir. 2000).  Indeed, though "not all actions by police officers are governed by the Fourth Amendment," the "constitutionality of arrests by state officials is governed by the Fourth Amendment rather than [a] due process analysis."  *Id*. at 268-69 (citations omitted).  Thus, the Court moves to consider Plaintiff's claims under the Equal Protection clause.

The Equal Protection clause prohibits States from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1. "In reviewing an Equal Protection claim, a court must first determine whether the alleged state action burdens a fundamental constitutional right or targets a suspect class."  *ASAH v. N.J. Dep't of Educ.*, 330 F. Supp. 3d 975, 1007 (D.N.J. 2018) (cleaned up).  "If a classification neither burdens a fundamental right nor targets a suspect class, [the Court] will uphold it so long as it bears a rational relation to

13

some legitimate end." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (cleaned up). "However, a classification that trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage ... must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest." *ASAH*, 330 F. Supp. 3d at 1007-08 (cleaned up).

"To establish a selective enforcement claim" under the Equal Protection clause, a plaintiff must demonstrate that she was (1) "treated differently from other, similarly situated [persons] and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right." *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (cleaned up). To be sure, the Equal Protection Clause bars "governmental [actors] from treating differently persons who are alike in all relevant respects." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citation omitted).

Here, Plaintiff cannot demonstrate that any of Defendants' alleged wrongful actions were motivated by racial or discriminatory animus against an identifiable protected class. There is no record evidence showing any action taking place because of Plaintiff's race beyond the fact that Plaintiff and Zylkiewicz are of different races. Indeed, this is not an instance where an officer chose to pull over and/or engage with Plaintiff. Rather, Zylkiewicz was involved in an accident with Plaintiff, and the parties were forced to engage with one another thereafter. Moreover, the existence of probable cause for the seizure, arrest, and motor vehicle violations do not suggest racial animus played a factor.[8] In sum, there is no evidence of racial discrimination beyond

---

[8] *See also* section III, A., 2, *infra,* as to the dismissal of any malicious prosecution claim based on the careless driving charge to which Plaintiff pled guilty. Though Plaintiff does not specifically address the issue, the guilty plea similarly negates any malicious prosecution claim based on any additional moving violations issued.

14

conclusory statements. Accordingly, Counts Two and Three are dismissed with prejudice.

### C. The Civil Conspiracy Claim (Count Five)

To prove a defendant attempted to deprive plaintiff her rights or privileges, the facts must establish that: (1) "two or more persons in any State . . . "conspire[d]"; (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) "one or more persons engaged" in the conspiracy did or "cause[d] to be done, any act in furtherance of the object of the conspiracy"; and (4) "another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States. . . ." 42 U.S.C. § 1985(3).

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (cleaned up). This requires evidence that State actors took a "concerted action" based on an "agreement" to deprive plaintiff of his or her constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights. *Id*. at 295 (cleaned up). Because there is no evidence of an agreement, concerted action, and no constitutional violation occurred, Count Five is dismissed with prejudice.

### D. Zylkiewicz is Entitled to Qualified Immunity

Qualified immunity "shields government officials from suit and from liability if their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known." *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (cleaned up). In the context of police officers, the Third Circuit recognizes that officers are permitted "to make reasonable mistakes about what is lawful." *Jones v. City of Jersey City*, 45 F. App'x. 196, 197 (3d Cir. 2002) (citation omitted). To that end, an officer is "entitled to qualified immunity if there was

15

any reasonable basis to suppose there was probable cause." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 439 (D.N.J. 2011) (cleaned up). "Under Section 1983, even if probable cause does not exist in fact, defendants may be entitled to . . . qualified immunity if they reasonably believed [] probable cause existed." *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 385 (2000).

The Third Circuit requires district courts to conduct a "two-step inquiry to determine whether a particular government official is entitled to summary judgment based on qualified immunity." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). First, courts consider "if the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right." *Lozano v. New Jersey*, 9 F.4th at 245 (cleaned up). Second, "whether the right was clearly established, because the contours of the right must be sufficiently clear such that the unlawfulness of the action was apparent in light of pre-existing law[.]" *Id.* at 245 245 (cleaned up).

Here, the analysis stops at the first prong because there are no facts in dispute that suggest Zylkiewicz violated Plaintiff's constitutional rights. Moreover, as discussed *infra*, it was reasonable for Zylkiewicz to believe that there was probable cause to arrest and charge Plaintiff. Consequently, even if Zylkiewicz were mistaken, he would still be entitled qualified immunity.

### IV.      CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 75) is **GRANTED**, and all remaining claims in Plaintiff's Amended Complaint (ECF No. 53-1) are **DISMISSED** with prejudice. An appropriate Order accompanies this Opinion.

DATED: September 26, 2024

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge